NANCY JOHN, Plaintiff-Appellant, v. THE CITY OF MACOMB *et al.*, Defendants-Appellees.

Third District   No. 3—91—0721

Opinion filed July 7, 1992.—Modified on denial of
rehearing August 4, 1992.

John R. Glidden and Stanley L. Tucker, both of Hartzell, Glidden, Tucker & Hartzell, of Carthage, for appellant.

Stephen J. Heine and Karen L. Kendall, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee City of Macomb.

William A. Allison, of Allison & Kelly, of Bloomington, for appellee County of McDonough.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiff brought suit against the City of Macomb and the County of McDonough claiming damages for personal injuries she suffered on June 24, 1989, in a fall on property possessed and owned by defendants, respectively. Plaintiff's complaint charges that defendants were guilty of negligence in knowingly permitting and failing to repair a dangerous condition on the courthouse lawn.

At the time of the accident plaintiff was attending a festival known as "Heritage Days." The City moved to dismiss on the ground of governmental immunity (Ill. Rev. Stat. 1989, ch. 85, par. 3—106). The trial court denied the motion, holding that the courthouse lawn where plaintiff fell was not specifically intended for recreational purposes. Both defendants answered the complaint, and the matter proceeded to discovery. After plaintiff was deposed, defendants moved for summary judgment, again claiming immunity pursuant to section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—106). The court granted summary judgment in favor of both defendants and denied plaintiff's post-judgment motion. Plaintiff perfected this appeal. For reasons that follow, we reverse.

On review, we will sustain a trial court's grant of summary judgment only where the pleadings, depositions, admissions and exhibits of record, construed strictly against the movant, reveal that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.* (1992), 226 Ill. App. 3d 507, 589 N.E.2d 1034.) In addition to the pleadings and the parties' attorneys' legal memoranda, the record before us contains a transcript of plaintiff's deposition and the parties' interrogatories and responses.

From the documentation of record, the following facts appear undisputed. On the evening of June 24, 1989, the "inside street" around the courthouse in Macomb was closed for Heritage Days, an annual event taking place on the courthouse lawn. This inside street has several parking spaces along the curb on the northwest side, and beyond the curb is a grassy lawn. A hole was left on the lawn side of the curb where a parking meter had been removed. It had not been filled as of around 8 p.m. of the date in question when plaintiff fell. According to plaintiff, she and her husband had gone to the festival to see a band. After listening to the band, they headed toward the courthouse for a concession stand. Plaintiff stepped from the pavement of the inside street, to the curb and then to the hole in the lawn. As she fell, plaintiff's ankle "popped." She felt it swell up immediately and was taken to the hospital.

Section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) provides as follows:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Ill. Rev. Stat. 1989, ch. 85, par. 3—106.)

The purpose of the legislation is to encourage the development and maintenance of parks, playgrounds and similar areas. *Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 86, 491 N.E.2d 165, 168, citing *Beckus v. Chicago Board of Education* (1979), 78 Ill. App. 3d 558, 397 N.E.2d 175.

The primary issue before us is whether plaintiff's fall took place in an area "intended or permitted to be used for recreational pur-

poses." In our opinion, that issue remains a genuine question of material fact.

From the record it cannot be determined whether "Heritage Days" is a recreational use of the courthouse lawn. Nor does the record disclose whether defendants customarily permitted any recreational activity on the lawn. The record indicates that on the night in question a band played. But permitting a band concert, without more, does not so alter the character of a public area not generally used for recreational activity that it would necessarily fall within the intended scope of section 3—106 of the Act. In our opinion, the legislative intent of the Act is to immunize governmental entities from liability for simple negligence in areas where public activities of a sportive nature, as opposed to stage entertainment, are permitted. Similarly, the record discloses that a concession stand was permitted on the premises. This is surely a business pursuit—not one that, in itself or combined with the proximity of a band concert, renders the grounds a recreational facility for purposes of section 3—106 of the Act.

Further, even assuming that recreational activities were permitted on the lawn, there is no evidence that the street, curb and the parking meter area where plaintiff fell were necessarily within the perimeter of the area where recreational activities were allowed. The record fails to establish whether admission to the festival required the purchase of tickets before entering the inside street. There is no indication of record whether any area was cordoned off for recreational activities. Although there is some indication that the street that plaintiff was leaving to proceed to the lawn had been closed, the record does not disclose whether this measure was taken for the safety of the public or to allow the street and curbing area to be used for recreation. If the public used the closed street during the festival merely for passing unmolested by motor vehicles—as opposed to racing or dancing, for example—the street and its periphery, including the parking meter area, would not necessarily be considered part of an open area where recreational activities were permitted for purposes of the Act.

In *Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 491 N.E.2d 165, the court considered a case somewhat analogous to this. There, plaintiff was injured while roller skating on a public sidewalk in a residential neighborhood. Among the city's asserted defenses was immunity under section 3—106 of the Act. Defendant argued that plaintiff's use in fact of the public way for recreation warranted extending the protection of the special immunity to the

municipal defendant. On appeal, the court rejected the defense as inimical to the legislative intent of the provision. The court's analysis is instructive for our purposes today:

> "A public sidewalk in a residential neighborhood is not similar to a park or playground which are open areas designated by a governmental entity as being specifically intended for recreational purposes. Moreover, defendant's interpretation of section 3—106 would shield the city from liability for its negligent maintenance of any street, sidewalk or open area in the city where the injured party has been engaged in recreational activity. Nothing in the statute indicates that the legislature intended to grant such a broad scope of immunity." 142 Ill. App. 3d at 87, 491 N.E.2d at 168.

While we are aware that the statute was subsequently modified to include buildings and other enclosed recreational facilities, we do not find that the legislatively intended scope of the provision was so broadened as to obviate the *Larson* court's observation about the types of "open areas" that section 3—106 encompasses. Thus, lacking any factual basis for determining that the area where plaintiff fell was specifically intended or permitted for recreational use, we hold that defendants were not entitled to judgment on the ground of immunity under section 3—106.

Because we find that defendants' right to judgment has not been established as a matter of law, we need not address plaintiff's arguments in the alternative. We reverse the judgment of the circuit court of McDonough County and remand this cause for further proceedings.

Reversed and remanded.

STOUDER and McCUSKEY, JJ., concur.