**Timothy HALL, Plaintiff,**

v.

**Daniel SANCHEZ, Defendant.**

No. 88 C 8278.

United States District Court,
N.D. Illinois, E.D.

March 16, 1989.

Steven B. Muslin, Michael Wilkie, Steven B. Muslin, Ltd., Chicago, Ill., for plaintiff.

Jonathan P. Siner, Judson Miner, Office of Corp. Counsel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Timothy Hall has sued defendant Daniel Sanchez, a City of Chicago ("City") police officer, under 42 U.S.C. § 1983 and Illinois common law for allegedly shooting him at point blank range while plaintiff was panhandling on Belmont Avenue in Chicago, Illinois. Defendant an-

swered the federal claim, but moved for dismissal of the two state law claims on the grounds that plaintiff failed to give notice of his claims within one year as required by the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("the Tort Immunity Act"), Ill.Rev.Stat. ch. 85, ¶¶ 8–102, 8–103.[1] For the reasons set forth below, the motion is denied.

## I.

Plaintiff alleges that the incident at issue here occurred on October 23, 1986. According to the complaint, plaintiff was panhandling when he came across defendant. The complaint does not say how defendant was dressed, but it does allege that he was "a duly appointed and acting police officer in the City of Chicago."

When plaintiff asked defendant for spare change, defendant became enraged, grabbing plaintiff and placing him in a choke hold. Plaintiff pulled away and attempted to defend himself by assuming a karate stance. At this point, defendant pulled out a gun and identified himself as a Chicago police officer. Plaintiff began to put his hands over his head, but defendant fired his weapon, hitting plaintiff in the chest.

In Count I, plaintiff alleges that defendant violated his rights under the Fourth and Fourteenth Amendments of the federal Constitution; in Count II, plaintiff alleges that defendant's acts were negligent; in Count III, that they constituted an assault and battery.

## II.

Defendant has moved to dismiss Counts II and III on the grounds that plaintiff failed to give the City notice of his claims within one year of the date of the incident. Paragraph 8–102 of the Illinois Tort Immunity Act provides that:

> Within 1 year from the date that the injury or cause of action ... was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting within the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whose employee the action is contemplated a written statement [describing the incident and the nature of the alleged injury].[2]

Paragraph 8–103 provides that if the notice required by ¶ 8–102 is not served:

> [A]ny such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom the cause of action accrued shall be forever barred from further suing.

Plaintiff did not allege in his complaint that he gave the required notice to defendant or the City, and concedes in his briefs that he did not do so. Nevertheless, plaintiff maintains that dismissal at the pleading stage is inappropriate because ¶¶ 8–102 and 8–103 apply only to acts committed by a government employee "while acting within the scope of his employment as such em-

---

1. Defendant has styled his motion as one to dismiss or for summary judgment. Because discovery is only at the early stages, this court assumes that defendant styled it this way only to ensure that he could present his evidence that plaintiff never served the required notice. However, as noted below, plaintiff did not allege that he served such notice, and concedes in his brief that he did not. Accordingly, there is no need to treat this motion as one for summary judgment. Defendant may present a summary judgment motion, if he deems it appropriate, at the close of discovery.

2. The Tort Immunity Act was amended effective November 25, 1986. The amendment repealed the one-year notice requirement of ¶ 8–102, but shortened the limitations period for actions against local government entities or their employees from two years to one year, *see* ¶ 8–101 (as amended). Both sides agree that, because the cause of action in this case accrued prior to the effective dates of the amendments, the pre-amendment provisions apply. *See, e.g., Johnson v. Carroll,* 694 F.Supp. 500, 506 (N.D.Ill.1988).

ployee." According to plaintiff, although the complaint alleges that at the time of the incident defendant was acting under color of state law and was "a duly appointed and acting police officer in the City of Chicago," these allegations do not necessarily mean that defendant was acting within the scope of his employment when he fired his weapon.

Defendant does not dispute that Rule 8(e)(2) of the Federal Rules of Civil Procedure would permit plaintiff to set forth inconsistent allegations in his complaint, so that plaintiff could have alleged in Count I that defendant's acts were within the scope of his employment, but then alleged in Counts II and III that they were not. Defendant insists, however, that this is not what plaintiff has done.

Paragraph 4 of Count I of the first amended complaint alleges that "[a]t all relevant times the defendant ... was a duly appointed and acting police officer in the Chicago...." Plaintiff specifically incorporates paragraph 4 of Count I as paragraph 4 of Counts II and III. According to defendant, this paragraph amounts to an allegation that his acts were within the scope of his employment as a police officer, and therefore vitiates plaintiff's argument that he has alleged conduct outside the scope of defendant's employment.

Defendant bolsters his argument with a number of tangential references to other aspects of Illinois law. First, defendant notes that plaintiff never served defendant personally, but served only the Office of the Superintendent of the Chicago Police Department. Defendant argues that although such service suffices to acquire personal jurisdiction over defendant for claims against him in his capacity as a police officer—i.e., for acts he committed within the scope of his employment—it does not suffice to acquire personal jurisdiction over him for claims outside the scope of his employment.

Defendant also notes that the City of Chicago, through the Corporation Counsel, has appeared for defendant, and that it may do so under the Illinois indemnity statute only if defendant is being sued for acts committed while acting within the scope of his employment. *See* Ill.Rev.Stat. ch. 85, ¶ 2–302. Defendant argues that because his obligation to secure independent counsel as well as his potential personal liability turn on the nature of the allegations against him, plaintiff should have the burden of specifically pleading whether or not the claims are predicated on actions within the scope of defendant's employment. Since plaintiff did not do so here, defendant contends that his state law claims should be dismissed.

What both parties noticeably do not do, however, is to provide any authority for the arguments they make. This omission is particularly significant here, for in *Walsh v. City of Chicago,* —— F.Supp. —— 1988 U.S.Dist.LEXIS 11093 (N.D.Ill. September 30, 1988), this court followed Judge Shadur's ruling in *Santella v. Grishaber,* 672 F.Supp. 321, 325–26 (N.D.Ill.1987), that ¶¶ 8–102 and 8–103 "apply only to suits brought against municipal employees in their official capacities." *Walsh,* slip op. at 8. Since plaintiff's claims here, whether or not construed as alleging activity within the scope of defendant's employment, are directed only against defendant in his individual capacity, those two cases would appear to defeat defendant's argument at the outset.

▇ Yet, plaintiff did not make this argument, and this court's review of the relevant case law indicates that the court should not have followed Judge Shadur on this score.[3] Paragraph 8–102, by its terms, applies to civil actions against "against a local public entity, or against any of its employees whose act or omission committed while acting within the scope of his employment as such employee." The dual purposes of the statute are to "encourage[ ] an early investigation and prompt settlement of meritorious claims [and to provide government entities with] knowl-

---

**3.** It was worth noting that the individual capacity claims in *Walsh* were dismissed on other grounds so this court's determination in that case that ¶¶ 8–102 and 8–103 did not apply to individual capacity claims did not affect the outcome.

edge of the approximate number of claims against them." *Johnson v. King,* 55 Ill. App.3d 336, 341, 13 Ill.Dec. 323, 371 N.E.2d 18 (1977).

Although a suit against a government employee in his individual capacity differs from one against the employee in his official capacity inasmuch as the former does not automatically seek recovery against the government entity, Illinois law makes government entities liable for individual capacity claims when those claims are predicated on an employee's acts within the scope of his employment. *See* Ill.Rev.Stat. ch. 85, ¶ 9–102. Thus, the policies mandating notice for claims against public entities also pertain to suits against public employees for acts within the scope of their employment, and Illinois courts have accordingly held that ¶¶ 8–102 and 8–103 apply to actions against government employees in their individual capacities so long as the alleged misconduct is within the scope of their employment. *See Johnson v. King,* 55 Ill.App.3d at 340–41, 13 Ill.Dec. 323, 371 N.E.2d 18; *Ramos v. Armstrong,* 8 Ill. App.3d 503, 289 N.E.2d 709 (1972); *Dear v. Locke,* 128 Ill.App.2d 356, 262 N.E.2d 27 (1970); *Liss v. Poviliaitis,* 1987 U.S.Dist. LEXIS 2755 (N.D.Ill. April 9, 1987) [1987 WL 9299].

Given this reading of ¶¶ 8–102 and 8–103, the only question that remains is whether Counts II and III of plaintiff's amended complaint may be read as alleging acts outside of the scope of defendant's employment as a police officer. If so, then plaintiff may proceed on his two state law claims; if not, then plaintiff will either have to amend these claims or suffer their dismissal.

■ It is by now well-settled that in ruling on a motion to dismiss, the pleadings must be liberally construed. *See* Fed.R. Civ.P. 8(f). At the same time, however, a complaint must give notice to the defendants of the claims against which they must defend. Defendant argues that the plaintiff violated the latter mandate by failing to set forth in his pleadings whether his claims were for conduct within the scope of defendant's employment.

Although this court is aware of no case directly on point, a useful analogy can be drawn from those civil rights cases in which plaintiffs fail to specify whether they are suing the defendants in their individual or official capacities. In those cases, the same problems of notice to the defendants are present as in this case. Nevertheless, the Supreme Court has instructed lower courts to consider the manner in which the parties have treated the suit in determining the capacity in which the defendants are sued. *See Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985). The Seventh Circuit has abided this instruction by creating a rebuttable presumption "that a section 1983 claim against a public official is an official-capacity suit." *Conner v. Reinhard,* 847 F.2d 384, 394 n. 8 (7th Cir.1988). But neither the Supreme Court nor the Seventh Circuit has ever intimated that dismissal is an appropriate remedy for a plaintiff's failure to specify a defendant's capacity in his complaint.

■ Defendant's two policy arguments for insisting on more specific pleading with respect to the scope of employment issue are not pursuasive. As noted above, defendant has argued that if the state law claims against him are predicated on conduct outside the scope of his employment, then this court never acquired personal jurisdiction over him because plaintiff served only the Office of the Superintendent of the Chicago Police Department. Yet, even if these claims were predicated on conduct within the scope of defendant's employment, the court would still have jurisdiction over him only if he were personally served or consented to this court's jurisdiction. *Amen v. City of Dearborn,* 532 F.2d 554 (6th Cir. 1976); *see also* 4A Wright & Miller, *Federal Practice & Procedure: Civil* sec. 1109 at 171 ("[I]f the suit is against a government officer as an individual, rather than as an official, then service on the chief executive officer will be insufficient to confer jurisdiction over the individual."). If defendant believed he was not properly served, he could have either ignored the complaint or moved for dismissal for lack

of personal jurisdiction pursuant to Rule 12(b)(2). By choosing not to do so, defendant waived any objections to this court's personal jurisdiction over him. *See* Fed.R. Civ.P. 12(h)(1).

Indeed, defendant's real objection to the ambiguity in plaintiff's complaint appears tied to the informal policy of the Chicago Police Department to personally serve police officers when complaints against them for actions within the scope of their employment are brought to the Department. Apparently, the Department would prefer to provide this service to individuals seeking to sue police officers than to provide the addresses of police officers to such people for service at the officers' homes. Defendant believes it unfair to allow an individual who is not suing an officer for acts within the scope of his employment to take advantage of this service by merely leaving ambiguity in his complaint as to the nature of his claims.

Yet, this court fails to see how the interests underlying the Department's policy of serving officers at their jobs is affected by the nature of the claims against the officers. The Department's hesitance in revealing the addresses of police officers should be just as great when an individual wishes to sue an officer for acts outside the scope of his employment as it is when an individual is suing for acts within the scope of the officer's employment; particularly where, as here, the complaint is against the officer for his actions under color of state law.

■ Defendant's second policy argument has a stronger foundation in state law. Under ¶ 2–302 of the Tort Immunity Act, Ill.Rev.Stat. ch. 85, ¶ 2–302, the City is authorized to "appear and defend against [a] claim or action" only if the "claim or action is instituted against an employee or former employee ... based on an injury allegedly arising out of an act or omission occurring with the scope of his employment as such employee." Defendant argues that pleading specificity is required so that he, as well as the City, can know whether the City may defend him or, instead, he should retain private counsel. Although this argument contains some merit, this court does not find it sufficient to alter the liberal pleading standards of the federal rules, for a number of reasons.

First, it is not at all clear that the City will have to withdraw as defendant's counsel. Illinois municipalities routinely defend police officers sued under the federal civil rights statutes even though such claims generally state only that the officer is sued for acts under color of state law, a concept distinct from the scope of employment concept employed by the state statute. *See Coleman v. Smith*, 814 F.2d 1142, 1148–49 (7th Cir.1987). And the statute allows the City to appear for City employees not only on claims predicated on acts or omissions within the scope of employment, but also on *actions* predicated on such acts or omissions. Since Count I is a sec. 1983 claim for which the City will represent defendant irrespective of whether it is predicated on acts within the scope of his employment, and since the Illinois statute allows the City to defend employees not only on individual claims, but on actions as well, it appears that the City could continue to represent defendant on all of the claims in this action.

Furthermore, even if the City must withdraw and defendant must seek private counsel, that result obtains not because plaintiff failed to specify at the outset that his state law claims were predicated on conduct outside the scope of defendant's employment, but rather because the State of Illinois has chosen to limit the scope of the City's permissible representation of its employees. Defendant will not have been prejudiced at all—that is, he will be in no worse position than had the complaint specifically stated that the claims were based on conduct outside the scope of his employment—and the City will have been prejudiced, at most, only to the extent that it represented defendant on one motion it would not have otherwise, hardly a basis for dismissing plaintiff's claims with prejudice.

### III.

Having determined that dismissal at this stage is not required, it is important to note

what this court has not decided here. Defendant has moved to dismiss solely on the grounds that the complaint states that defendant was, at the time of the incident, a duly appointed and acting police officer, and that the complaint nowhere specifies that he is being sued for conduct outside the scope of his employment. Defendant has not argued that the nature of the acts alleged in the complaint necessarily fall within the scope of defendant's employment, and accordingly has provided no authority on this point.

 This court's own research, however, suggests that plaintiff may have failed to allege, or at least will be unable to prove, that defendant's acts were outside the scope of his employment as a police officer. The Illinois courts employ an objective test in determining whether an employee's acts are within the scope of his employment for the purposes of the Tort Immunity Act. *See Johnson v. King,* 55 Ill.App.3d at 340–41, 13 Ill.Dec. 323, 371 N.E.2d 18. Thus, the inquiry will focus not on defendant's subjective intent at the time of the incident, but instead on whether his actions, objectively viewed, had "an intimate bearing on the duties normally assigned to the office of employment, even though usurped or misused." *Coleman v. Smith,* 814 F.2d at 1149.

Of course, plaintiff's version of what happened may differ substantially from defendant's, and it may become a jury question as to whether defendant's actions were within the scope of his employment. But the allegations of the complaint alone indicate that a jury may not be necessary on this score. Plaintiff has alleged that defendant pulled out his gun and identified himself as a police officer before firing his weapon. If defendant was authorized to make arrests at the time of the incident, these allegations would at least support an argument that, irrespective of whose version of events the jury were to believe, defendant was acting within the scope of his employment as a matter of law. *See, e.g., Johnson v. Carroll,* 694 F.Supp. 500, 506 (N.D.Ill.1988).

Defendant, however, has not made this argument at this stage, and this court will not dismiss plaintiff's claims without his having had the opportunity to make arguments to the contrary. Accordingly, this court will deny defendant's motion to dismiss, and await summary judgment papers at the close of discovery to determine whether plaintiff's state law claims should go to trial.

### CONCLUSION

Defendant's motion to dismiss Counts II and III of the first amended complaint is denied.